**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Donna Kay Milner, <br><br> Plaintiff, <br><br> v. <br><br> Delta Air Lines, Inc., and <br> Metropolitan Airports Commission, <br><br> Defendants. | Case No. 25-cv-3064 (PJS/LIB) <br><br><br><br> **ORDER** |

Matthew James Barber, Phillip H. Wagner, and Kojo Anim Addo, Schwebel, Goetz & Sieben, 80 S. 8th St., Ste. 5120, Minneapolis, MN 55402, for Plaintiff.

Scott R. Torpey, Timothy James O'Connell, and William David Adams, Taft Stettinius & Hollister LLP, 27777 Franklin Rd., Ste. 2500, Southfield, MI 48034, and Tanner J. Sparrow, Taft Stettinius & Hollister LLP, 2200 IDS Center, 80 S. 8th St., Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge[1]

This matter is before the Court on the Motion to Dismiss Based on the Fraudulent Joinder Doctrine and Rule 12(c) [Doc. No. 26] filed by Defendant Metropolitan Airports Commission ("MAC").  For the reasons below, the Court grants the motion.

I.    **BACKGROUND**

In this personal injury action, Plaintiff Donna Kay Milner alleges that on November 16, 2022, as she was walking from a Delta Air Lines aircraft onto a movable passenger

---

[1] Although this matter is assigned to the Honorable Patrick J. Schiltz, Chief Judge of the U.S. District Court for the District of Minnesota, the undersigned judge presided over the hearing on the instant motion.

1

boarding bridge ("PBB") at Gate D5 of Terminal 1 at Minneapolis-St. Paul Airport (MSP), she fell through a gap between the aircraft and the PBB, sustaining injuries. (Compl. [Doc. No. 1-3] ¶¶ I–IV.)  Ms. Milner alleges that the "premises [were] operated by" Delta Air Lines and MAC.  (*Id.* ¶ I.)

In July 2025, Ms. Milner sued Delta Air Lines and MAC in Minnesota state court, asserting that Defendants caused her injuries.  In her two-page Complaint, she alleges Defendants engaged in the following conduct:  (1) negligent inspection, maintenance, and repair of the premises; (2) failure to warn of a dangerous condition; (3) failure to maintain the area in a reasonably safe condition; (4) failure to reasonably repair the condition; and (5) "other negligent acts and omissions."  (*Id.* ¶ III.)

Defendants removed the lawsuit to this Court.  In their Notice of Removal [Doc. No. 1], Defendants asserted federal subject matter jurisdiction based on diversity of citizenship and the doctrine of fraudulent joinder.  (Notice of Removal at 1.)  The parties do not appear to dispute that Plaintiff is a Minnesota resident, and, for purposes of diversity, that MAC is a citizen of Minnesota, and Delta Air Lines is a citizen of Delaware and Georgia.  (*See* Defs.' Answer [Doc. No. 1] ¶¶ 17, 18, 33.)  MAC is a public corporation chartered by the State of Minnesota to manage commercial aviation services at MSP and nearby airports. *Enter. Leasing v. Metro. Airports Comm'n*, 250 F.3d 1215, 1216 (8th Cir. 2001).

Attached to Defendants' Notice of Removal are declarations from representatives of MAC and Delta Air Lines, both of which contain the same exhibit—an excerpt from the lease agreement between Delta Air Lines and MAC relating to PBBs at MSP Terminal 1

(the "Lease Agreement").  (Kedrowski Decl. [Doc. No. 1-1], Ex. 1 (Lease Agmt.); Fischer Decl. [Doc. No. 1-2], Ex. 1 (Lease Agmt).)[2]

The Lease Agreement states that MAC owns specific PBBs within Terminal 1 of the MSP Airport, including the PBB on which Plaintiff fell, located at Gate D5.  (Lease Agmt. § VIII.E.2(a).)  It further provides that at Terminal 1, "[Delta][3] is responsible for all maintenance, repair, and operation of PBBs owned by MAC that [Delta] uses, and shall pay all costs of maintaining, repairing and operating those PBBs."  (*Id.* ¶ 3.)  It further provides that "[Delta] will train its personnel in proper PBB maintenance procedures[.]" (*Id.* ¶ 3(a).)  The Lease Agreement requires Delta to indemnify the MAC, stating, "[Delta] agrees to indemnify and hold harmless MAC for the use and operation of any PBBs by [Delta], its Affiliated Airlines or its subtenants[.]"  (*Id.* ¶ 4.)

In its Motion to Dismiss, MAC points to the Lease Agreement's provision assigning Delta sole responsibility for the PBBs' maintenance, repair, and operation.  It argues that under these facts and Minnesota law concerning premises liability for landowner lessors, there is no reasonable basis for Ms. Milner's claims against MAC.  (Def. MAC's Mem. Supp. Mot. for J. on Pleadings ("Def. MAC's Mem.") [Doc. No. 28] at 12–15; Def. MAC's Reply [Doc. No. 35] at 4–6.)  Therefore, MAC contends it was fraudulently joined as a

---

[2] The complete Lease Agreement, which covers numerous issues, is attached as an exhibit to MAC's Answer, and is found at Doc. No. 17-1.

[3] While the Lease Agreement uses the generic term "AIRLINE," there is no dispute that the parties to the relevant agreement were MAC and Delta.  The Court therefore substitutes "Delta" where "AIRLINE" appears in the Lease Agreement.

defendant in an effort to defeat federal jurisdiction over the claim, and is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).   (Def. MAC's Mem. at 12–15.)

Ms. Milner disagrees, arguing first that the Court cannot consider the Lease Agreement and MAC's accompanying affidavits.  Rather, she contends the Court must limit its review to the allegations in her Complaint.  (Pl.'s Opp'n [Doc. No. 32] at 9–11.) However, even if the Court considers the Lease Agreement, Ms. Milner asserts that it does not foreclose her colorable claims against MAC.  (*Id.* at 13–27.)  She argues that three common law exceptions apply to the general rule precluding landowner/landlord/lessor liability, and that the Lease Agreement does not delegate MAC's landowner duties to inspect and warn to its lessee.  (*Id.*)

In its Reply, MAC argues that Minnesota law does not impose upon it a duty to inspect or warn, that any landowner/landlord/lessor duties under Minnesota common law are inapplicable, and that the common law exceptions invoked by Ms. Milner are also inapplicable. (Def. MAC's Reply at 4–20.)  Accordingly, MAC reasserts its argument that it was fraudulently joined and it seeks dismissal from this action with prejudice.

## II.   DISCUSSION

### A.   Fraudulent Joinder Standard of Review

Under 28 U.S.C. § 1441(a), a defendant may remove a state court civil action to federal court if the action could have been filed in federal court originally.  However, if federal subject matter jurisdiction is lacking or the removal is found to be procedurally defective, remand to state court is required.  28 U.S.C. § 1447(c).  The party who removed

the case to federal court bears the burden of demonstrating federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

As stated earlier, Ms. Milner and MAC are both citizens of Minnesota. MAC argues that because complete diversity is lacking, it was fraudulently joined as a defendant in order to defeat the assertion of federal jurisdiction. "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *Krebsbach v. Rewerts*, No. 24-cv-4402 (KMM/LIB), 2025 WL 1031156, at *5 (D. Minn. Apr. 7, 2025) (citing *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)). The use of the word "fraudulent" is a bit of a misnomer, as a "a finding of fraudulent joinder does not require a finding of fraudulent intent; rather fraudulent joinder exists if, whatever the plaintiff's motive, their claim against an in-state defendant has no chance of success." *Larsen v. Bank of Am., N.A.*, No. 11-cv-1775 (MJD/JSM), 2011 WL 6065426, at *4 (D. Minn. July 21, 2011) (citing *Schwenn v. Sears Roebuck, & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993)).

To establish fraudulent joinder, a defendant must demonstrate that "'there exists no reasonable basis in fact and law'" for the plaintiff's claims. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). "Fraudulent joinder does not exist where there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011). If there is a "colorable" claim, i.e., if the governing state law "*might* impose liability on the resident defendant under the facts alleged," then joinder is not fraudulent. *Filla*, 336 F.3d at 810.

Conversely, "where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent." *Id.* Even though diversity may be lacking, the fraudulent joinder doctrine permits a district court to "assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012).

While "'[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court,'" *Block*, 665 F.3d at 948 (quoting *In re Prempro Prod. Liab. Litig.*, 591 F.3d at 620), "some courts examine material beyond the complaint's allegations to 'determine if there is any factual support' for the claims against the allegedly fraudulently joined defendant." *Id.* (quoting *Masepohl v. Am. Tobacco Co., Inc.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997)).

Ms. Milner argues that consideration of any materials beyond the Complaint is improper, citing *Remmick v. Brunswick Corporation*, in which the court declined to consider an expert report, and an affidavit submitted by plaintiff's counsel, in assessing fraudulent joinder. No. 25-cv-1951, 2025 WL 2778044, at *2 (D. Minn. Sept. 29, 2025). The court found that the expert report "undermined" the plaintiff's claims against the nonmoving and non-diverse co-defendant, and the attorney affidavit merely discussed the parties' preliminary positions and "d[id] not add factual content" supporting the plaintiff's negligence claim. *Id.* By contrast, the Lease Agreement here merely sets forth the

6

Defendants' contractual relationship. Unlike the expert report or attorney affidavit in *Remmick*, it does not opine on or address liability.

Ms. Milner also relies on *Banbury v. Omnitrition International, Inc.*, 818 F. Supp. 276, 280 (D. Minn. 1993), where the court noted that it "only reviews factual and legal materials outside of the pleadings to determine if there are any facts supporting the plaintiffs' claims against the resident defendants." The court found that the plaintiffs had proffered sufficient evidence to state a colorable claim against the individual defendants for intentional interference with a contract. *Id. Banbury* relied on two other decisions, *Anderson v. Worldwide Church of God*, 661 F. Supp. 1401 (D. Minn. 1987), and *Scientific Computers, Inc. v. Edudata Corp.*, 596 F. Supp. 1290 (D. Minn. 1984). In *Anderson*, the court "pierced the pleadings" to consider answers to interrogatories, a title opinion, and representations of counsel in finding that the plaintiff had no colorable claim. 661 F. Supp. at 1402–03. Similarly, in *Scientific Computers*, the court considered the entire "record before the court," including two affidavits submitted by the defendant "to show that joinder was not bona fide." 596 F. Supp. at 1292–93 ("Most damaging to [plaintiff's] claim of bona fide joinder . . . were the unrefuted facts of the submitted affidavits.").

The Lease Agreement here provides factual content for Ms. Milner's claims. In light of this legal authority and the unambiguous content of the Lease Agreement, it is appropriate for the Court to consider the Lease Agreement in its analysis of fraudulent joinder. The Court need not consider any other materials.

### B.      Judgment on the Pleadings Standard of Review

Motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6) are subject to the same standard of review. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); *see also Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022). The Court must accept the facts alleged in the complaint as true, and view those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013); *State Farm Auto. Ins. Co. v. Merrill*, 353 F. Supp. 3d 835, 837, 841 (D. Minn. 2018). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Hager*, 735 F.3d at 1013. Rather, the plaintiff's factual allegations must "raise a right to relief above the speculative level," in order to push claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

In addition, the Court ordinarily does not consider matters outside the pleadings on a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(d). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). Because the Court finds the Lease Agreement is embraced by the pleadings, the Court will consider it in assessing MAC's Rule 12(c) motion. The claims against Delta and MAC are predicated on Ms. Milner's allegation that the Defendants operated the premises on which she was injured. (Compl. ¶ I.) The Lease Agreement

8

governs the Defendants' relationship on the applicable "premises"—the PBB where Ms. Milner's injury occurred—and it is thus embraced by the pleadings.

Moreover, the Lease Agreement was attached as an exhibit to Defendants' Answer [Doc. No. 1], and some courts have found it appropriate, in the context of Rule 12 motions, to consider contracts attached as exhibits to answers. *Cortec Corp. v. 572415 B.C. LTD*, No. 19-cv-553 (NEB/DTS), 2020 WL 206380, at *2 (D. Minn. Jan. 14, 2020) (observing that "courts have considered contracts attached as exhibits to answers on motions for judgment on the pleadings.") (citation omitted); *see also Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (approving the consideration of a contract attached as an exhibit to a motion to dismiss, stating, "Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint.") (citation omitted).

Comparing the standards of review for fraudulent joinder and Rule 12 motions, the Eighth Circuit has stated that "[i]n order to establish fraudulent joinder, the defendant must "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12[] motion" since 'we do not focus on the artfulness of the plaintiff's pleadings.'" *Block*, 665 F.3d at 949 (quoting *Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011)).

### C.   Minnesota Contract Law

Because the Lease Agreement is a contract, the Court notes that under Minnesota law, the interpretation of unambiguous contractual language is a question of law for the Court. *See Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692

(Minn. 2018). The terms of a contract are ambiguous only if they are susceptible to more than one reasonable interpretation. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). It is well established, however, that a "contract's terms are not ambiguous simply because the parties' interpretations differ." *Id.* Indeed, as the Eighth Circuit has noted (when interpreting Minnesota law), courts must "fastidiously guard against the invitation to create ambiguities where none exist," and must endeavor to interpret words in a contract in accordance with their "plain and ordinary meaning." *In re SRC Corp. v. Exec. Risk Indem., Inc.*, 545 F.3d 661, 666 (8th Cir. 2008).

### D.    Negligence

"Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (citation omitted). To state a claim for negligence, a plaintiff must establish (1) the existence of a duty of care; (2) breach of that duty; (3) an injury; and (4) the breach of duty being the proximate cause of the injury. *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007). "Duty is a threshold question '[b]ecause a defendant cannot breach a nonexistent duty.'" *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 582 (Minn. 2012) (quoting *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011)). Thus, absent the existence of a legal duty, a negligence claim fails. *Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn. 1999). The existence of a duty is a legal question for the court to resolve. *Glorvigen*, 816 N.W.2d at 582 (citing *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986)).

Under the facts here, MAC is essentially a landowner or landlord at the MSP airport. While a "landowner generally has a continuing duty to use reasonable care for the safety of all entrants," *Louis v. Louis*, 636 N.W.2d 314, 319 (Minn. 2001), a landowner lessor, such as MAC, is generally not liable in tort to the lessee, or to his invitees, for any dangerous conditions in the premises. *Rice v. Forby*, 228 N.W.2d 581, 583 (Minn. 1975). Instead, "[t]he possessor of the [premises] has a personal duty to inspect the premises and warn of unreasonable risk of harm caused by the condition of the premises." *Studelska v. Oscar Roberts Co.*, No. C1-90-1756, 1991 WL 15399, at *2 (Minn. Ct. App. Feb. 12, 1991) (citing *Conover v. N. States Power Co.*, 313 N.W.2d 397, 406 (Minn. 1981)). Where the possessor of the premises is a lessee, such as Delta, a lease agreement may reflect the lessee's duty of care, and the lessor's corresponding lack of such a duty. *Id.* ("[L]essee, . . . was in possession and control of the premises. The express terms of the lease agreement provided that any duties with respect to the maintenance of the property were the responsibility of the lessee."); *see also Stelling v. Hanson Silo Co.*, 563 N.W.2d 286, 290 (Minn. Ct. App. 1997) (noting that "with some exceptions, lessor of property [is] not liable to lessee or others for physical harm caused by dangerous condition that comes into existence after lessee has taken possession.") (citing Restatement (Second) of Torts § 355 (1965).

Ms. Milner asserts that both MAC and Delta were negligent for failure to inspect, maintain, and repair the PBB, and failure to warn of a dangerous condition. (Compl. ¶ III.) As the Court explains below, under the facts alleged, Ms. Milner's claims against MAC

11

lack a reasonable basis in fact and law, and therefore, the Court finds that MAC has been fraudulently joined.

### 1.      Duty to Maintain and Repair

In her two-page Complaint, Ms. Milner simply alleges that she was injured "on premises operated by Defendant [MAC] and Defendant [Delta]." (*Id.* ¶ I.)  She alleges only one condition that caused her injury—the "hazardous gap between the aircraft and the [PBB]." (*Id.* ¶¶ I–II.)  Therefore, as a preliminary matter, the specific "premises" on which she was injured was the PBB at Gate D5, on November 16, 2022.  (*Id.* ¶ II.)

Ms. Milner presents no facts in support of her allegation that MAC "operated" or "controlled" the PBB, however.  Nor does she allege any facts supporting her allegation that the sole condition leading to her injury—the "hazardous gap"—was caused by MAC's operation of the PBB or any other misconduct.

The Lease Agreement places all responsibility for maintenance and repair of the PBB on Delta.  (Lease Agmt. § VIII.E.3.)  It further provides that "[Delta] will train its personnel in proper PBB maintenance procedures in accordance with [the manufacturers' recommendations]" (*id.* at 3(a)), and that it "will operate and maintain the PBB according to the manufacturer's specification."[4]  (*Id.* at 3(b).)  These provisions are clear and unambiguous.

In addition to these unambiguous contractual terms, as the Court has noted, "Minnesota follows the common-law rule that landlords are generally not liable and have

_____

[4] Moreover, Delta agreed to indemnify and hold harmless MAC "for the use and operation of any PBBs by [Delta]." (Lease Agmt. § VIII.E.4.)

no duty of care to tenants for damages cause by defective conditions on the premises." *Wise v. Stonebridge Communities, LLC*, 927 N.W.2d 772, 776–77 (Minn. Ct. App. 2019). The general rule of no duty and no liability for a landowner lessor applies here, absent the application of a recognized exception, which the Court addresses *infra* at II.4. Absent an exception, there is not a reasonable basis for imposing liability on MAC for failure to maintain and repair the PBB in question, under the facts and the law.

### 2.    Duty to Inspect

Ms. Milner alleges MAC was negligent in its inspection of "the area." (Compl. ¶ III.) Again, the Court construes "the area" as the gap between the PBB and the aircraft at Gate D5 because it was the area where Ms. Milner's injury occurred. As the PBB was movable, the relevant "area" was the gap as it existed at the time of Ms. Milner's injury—not gaps that may have existed at other times or at other gates. But Ms. Milner alleges no facts regarding MAC's notice or knowledge of the gap in question, nor does she allege any facts supporting an inference that MAC should have had such knowledge or notice. Furthermore, MAC notes that imposition of such a duty of care would require it to inspect approximately 800 gaps created by aircraft arriving at MSP every day. (Def. MAC's Mem. at 7.) Ms. Milner does not allege facts giving rise to a duty to inspect, either in the Complaint or in her response in opposition to the instant motion.

Ms. Milner maintains that the Lease Agreement entirely fails to address MAC's duties to inspect or warn. (Pl.'s Opp'n at 15.) Therefore, due to the alleged omission of such terms, she contends she "has alleged colorable claims against MAC for breaching its duties to inspect and to warn." (*Id.*) The Court disagrees. While the PBB-specific section

of the Lease Agreement does not address duties to inspect, the Lease Agreement provides, overall, that

> MAC shall have the right, but not the obligation or duty, to inspect [Delta's] operations . . . for any purpose connected with this Agreement . . . for the purpose of determining whether [Delta] is fulfilling its obligations imposed on it under the provisions of this Agreement. . . . . The failure of MAC to inspect or monitor or give [Delta] notice of a default or notice of a hazardous or unsafe condition with respect to [Delta's] operations under this Agreement shall not release [Delta] from its liability to perform its obligations under this Agreement or impose any liability on MAC.

(Lease Agmt. § XVI.J.1-3.)  Under the clear terms of the Lease Agreement, MAC was not obligated to inspect the gap between the PBB and the aircraft created by Delta's PBB operator.

Accordingly, the Court finds there is not a reasonable basis for imposing liability on MAC for failure to inspect the PBB in question, under the facts and the law.

### 3.    Duty to Warn

Under Minnesota law, a landlord who has not agreed to repair a leased premises, as is the case here, (*see id.* § VIII.E.3), may have only a duty to warn of a dangerous condition. *Broughton v. Maes*, 378 N.W.2d 134, 136 (Minn. Ct. App. 1985).  However, a landowner is only liable for an entrant's injuries where either the landowner or its employees created the dangerous condition, or failed to rectify it after they knew or should have known of its existence. *Messner v. Red Owl Stores*, 57 N.W.2d 659,661 (Minn. 1953).  If the landowner creates or has actual or constructive knowledge of the dangerous condition, it must either repair it "or provide invited entrants with adequate warnings." *Olmanson v. LeSueur Cnty.*, 693 N.W.2d 876, 881 (Minn. 2005).

While Ms. Milner summarily asserts that MAC had a duty to warn about the gap (Compl. ¶ III), she alleges no facts showing that MAC created the gap or that MAC had actual or constructive knowledge of the gap. Moreover, as MAC notes, "Plaintiff does not allege any facts that would give rise to MAC's duty to warn every single disembarking passenger at MSP about every gap that Delta and other airlines create upon the arrival of every flight. This would impose on the MAC a duty to warn over 50,000 passengers per day about the gaps between [PBBs] and aircraft." (Def. MAC's Reply at 10.) In short, Ms. Milner fails to allege any factual support for imposing a duty to warn upon MAC, and there is not a reasonable basis for imposing liability on MAC for failure to warn under the law.

#### 4.    Exceptions to General Rule of No Liability for Lessors

Ms. Milner identifies three exceptions to the general rule that landowner lessors owe no duty of care to entrants for injuries on their leased premises, and argues that the exceptions apply here. (Pl.'s Opp'n at 15–22.) The exceptions concern whether the landowner lessor (1) retains possession and control over an area intended for common use (the "common area" exception); (2) has leased the premises for purposes of admission to the public (the "public use" exception; or (3) knows or should have known of a hidden dangerous condition on the premises, and the plaintiff, exercising due care, would not have discovered it. (*Id.* at 16) (citing *Wise*, 927 N.W.2d at 776–77).

#### a.    Common Area Exception

Ms. Milner argues that she has alleged a colorable claim against MAC because it owned the PBB, and the PBB is a common area because MAC requires Delta to "make the

15

MAC owned PBBs available for use by other airlines that use the [MAC]'s gates without additional charge." (Pl.'s Opp'n at 16) (citing Lease Agmt. § VIII.E.3.g.)  Ms. Milner only alleges that she was injured on November 16, 2022 by falling through a gap between the aircraft and PBB at Gate D5.  (Compl. ¶ II.)  She does not plausibly allege that the gap between the aircraft and PBB at Gate D5 was a "common area," nor do any provisions of the Lease Agreement specifically define it as such.

In addition, for the common area exception to apply, the landlord lessor must retain possession and control over a common area of the leased premises.  *Wise*, 927 N.W. at 777.  Ms. Milner relies on *Shah v. Delta Airlines*, No. 27-cv-21-9073 (Hennepin Cnty. Dist. Ct. May 8, 2023), where the plaintiff was injured after tripping over a doorstop in a corridor at MSP, and brought negligence claims against Delta and MAC.  The district court found that genuine issues of fact precluded summary judgment on the question of whether MAC breached its duty of care, because the corridor functioned as a common area over which MAC retained control, and the facts suggested that MAC had actual or constructive notice of the hazard.  (*Id.* at 6–12.)

*Shah* is distinguishable from the facts before this Court, as Ms. Milner does not allege the PBB is a common area, nor is it identified as such in the Lease Agreement.  Furthermore, even if the PBB here is construed as a common area, Plaintiff's allegations fail to provide any factual support for the proposition that MAC had possession and control over the gap between the aircraft and PBB at Gate D5 at the time of Ms. Milner's injury.

Accordingly, the Court finds that application of the common area exception has no reasonable basis in fact or law here.

16

### b.       Public Use Exception

Ms. Milner also contends that she has asserted a colorable claim against the MAC under the public use exception, asserting that "MAC contracted to allow Delta to use its premises in carrying out its business as an airline open to the public and the MSP airport is open to the public." (Pl.'s Opp'n at 19.) She argues that "evidence may show a dangerous condition of the PBB existed before MAC entered into its contract with Delta." (*Id.* at 19–20.)

Under the public use exception, liability may attach for a plaintiff's injuries if the landowner lessor "leased the premises for purposes involving admission to the public." *Wise*, 927 N.W.2d at 777. However, this exception only applies when a plaintiff sustains injuries due to a dangerous condition that existed on the premises *at the time the lessor leased the premises* to the lessee. *See Breimhorst v. Beckman*, 35 N.W.2d 719, 727 (1949)). Ms. Milner alleges that her injury resulted from the hazardous gap between the aircraft and a moveable PBB on November 16, 2022—not at the time MAC leased the PBB to Delta. As a factual matter, the gap could not have existed prior to the Lease Agreement, which governs the relationship and the rights and duties between MAC and Delta.

As to whether the specific premises here—the PBB at Gate D5—was a "public" space, the Lease Agreement confirms that "common use space" and "public areas" at MSP are "those holdrooms, ramps and ticket counter areas within the exclusive control and management of MAC that are made available by MAC to Airlines on a common use basis," including "circulation space, restrooms, lobbies, concession space, and other like

17

facilities." (Lease Agmt. §§ I.A.85.d; III.D.) PBBs are not included in the definition of common and public areas.

For all of these reasons, the Court finds that application of the public use exception has no reasonable basis in fact or law here.

### c.    Repairs and Known Dangers Exceptions

Finally, Ms. Milner argues that the repairs and known defects exceptions apply such that her negligence claim against MAC remains colorable. (Pl.'s Opp'n at 21.) Under the repair exception, a landowner remains liable for injuries occurring on its leased premises where the landowner undertook repairs and did so negligently. *Wise*, 927 N.W.2d at 777. There are no allegations here supporting a claim that MAC undertook repairs to the PBB, let alone negligently performed any such repairs. Moreover, the Lease Agreement relieved MAC of performing any repairs. (Lease Agmt. § VIII.E.3.)

Under the known danger exception, a landowner lessor may remain liable for an entrant's injuries if it knew or should have known of a hidden dangerous condition on the premises, and the lessee, using due care, would not have discovered it. *Wise*, 927 N.W.2d at 777. Ms. Milner contends that if MAC had "performed a reasonable inspection, it is colorable that the evidence may show it would have discovered a dangerous condition of the PBB," and that "Delta may not have discovered that dangerous condition despite using due care." (Pl.'s Opp'n at 22.)

MAC notes, however, that it is a long-standing principle under Minnesota common law that "[w]here there is no agreement by a landlord to do so, he is under no legal obligation to make repairs upon the leased premises." (Def. MAC's Reply at 15) (citing

18

*Barron v. Liedloff*, 104 N.W. 289, 290 (Minn. 1905)).  As the Lease Agreement makes clear, Delta, not MAC, expressly agreed to make repairs on the PBB at Gate D5.  (Lease Agmt. § VIII.E.3.)  Ms. Milner acknowledges that the Lease Agreement requires Delta to perform repairs to the PBB, but argues that it "leaves open that MAC may repair if Delta fails to meet MAC's requirements."  (Pl.'s Opp'n at 21) (citing Lease Agmt. § VII.E.3).  However, a mere contractual right without an obligation does not give rise to a legal duty. *See, e.g., RBC Dain Rauscher, Inc. v. Fed. Ins. Co.*, No. 03-cv-2609 (DSD/SRN), 2003 WL 25836278, at *4 (D. Minn. Dec. 2, 2003) (finding, that contract granting defendant a "right to defend" plaintiff did not impose a duty to defend plaintiff).  For all of these reasons, the Court finds that application of the known dangers exception has no reasonable basis in fact or law here.

Because there is no reasonable basis for predicting that Minnesota state law would impose negligence liability on MAC under the facts alleged, *Filla*, 336 F.3d at 811, MAC has been fraudulently joined.  Accordingly, Ms. Milner's request for remand to state court is denied and the Court retains jurisdiction over this case.

### E.      Motion to Dismiss

As noted earlier, MAC moves for judgment on the pleadings under Rule 12(c).  It argues that Ms. Milner's claims lack a reasonable basis for imposing liability as a matter of fact and law, and that Ms. Milner fails to plead the essential elements of a premises liability claim.  (Def. MAC's Mem. at 15; Def. MAC's Reply at 17.)  Accordingly, MAC argues that the Court should dismiss Plaintiff's claims against it with prejudice.  (Def. MAC's Mem. at 15; Def. MAC's Reply at 17.)

Again, Rule 12 requires that a plaintiff's allegations "raise a right to relief above the speculative level," in order to push the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. As noted earlier, a defendant who successfully establishes fraudulent joinder must "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Block*, 665 F.3d at 948. It follows then that MAC, which has met the fraudulent joinder standard of establishing that the Complaint fails to state a colorable negligence claim against it under the facts alleged, also meets Rule 12's standard of establishing that the plaintiff's claim is not plausible on its face. Accordingly, MAC's Motion for Judgment on the Pleadings under Rule 12(c) is granted. Plaintiff's claims against MAC are dismissed with prejudice.

## III.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant Metropolitan Airports Commission's Motion to Dismiss Based on the Fraudulent Joinder Doctrine and Rule 12(c) [Doc. No. 26] is **GRANTED**.

2.    Plaintiff Donna Kay Milner's claims against MAC are **DISMISSED WITH PREJUDICE**.

Dated: April 20, 2026                                    s/Susan Richard Nelson
                                                                  SUSAN RICHARD NELSON
                                                                  United States District Judge